SPRINGFIELD WAGON COMPANY *v.* BANK OF BATESVILLE.

Opinion delivered May 19, 1900.

1.  CORPORATION—LIEN ON STOCK.—Under Sand. & H. Dig., §1342, providing that a corporation "shall at all times have a lien upon all stock or property of its members invested therein for all debts due from them to such corporation," the lien which a corporation has on the stock of a member for debts due will not be displaced by the subsequent levy of an execution on such member's stock.  (Page 236.)

2.  SAME—PRIORITY OF LIENS.—Sand. & H. Dig., §1356, declaring that the provisions of the statute for the enforcement of a corporation's lien on the stock of its members for debts due shall not "affect any lien or

right acquired by any other party by virtue of any attachment or levy of execution upon the stock of any stockholder in any such corporation," only means that the statutory lien of a corporation on the stock of members for debts due shall not affect prior liens thereon. (Page 237.)

Appeal from Independence Circuit Court,

RICHARD H. POWELL, Judge.

### STATEMENT BY THE COURT.

H. H. Hinkle was the owner in 1894 of certain shares of stock in the Bank of Batesville. In that year he pledged this stock to S. R. Hinkle to secure payment of a loan of money. Afterwards he became indebted to the bank. This indebtedness of H. H. Hinkle to S. R. Hinkle and to the Bank of Batesville was still subsisting and unpaid in 1898, at which time the Springfield Wagon Company, the plaintiff in this action, recovered a judgment against H. H. Hinkle. An execution was issued on this judgment, and levied upon the shares of the bank stock which had been pledged to S. R. Hinkle. The levy was not made by an actual seizure of the certificates of stock, but by giving notice to the officers of the bank of the execution and levy, as provided by statute. The stock was sold under the execution, and purchased by the wagon company, but before the sale the wagon company was notified that the stock had been pledged to S. R. Hinkle, and that the certificates of stock were in his possession. It was also notified that H. H. Hinkle was indebted to the bank for a large amount, and that the bank claimed a lien therefor upon his stock. After the sale and purchase, the cashier of the bank refused to transfer the stock of Hinkle to the wagon company upon the books of the bank until the claim of the bank against Hinkle was paid. Thereupon the wagon company brought this action, asking for a writ of mandamus to compel the officers of the bank to transfer the stock on its books.

The bank for answer set up the debt of Hinkle to it, and claimed that by virtue of the statute it had a lien on the stock of Hinkle prior in time and superior to that of the wagon company, but offered to transfer the stock upon the payment of its debt. The wagon company denied the right of the bank to a

lien, but upon that question the circuit court sustained the claim of the bank, and dismissed the petition for mandamus. The wagon company appealed.

*Robert Neill* and *H. S. Coleman*, for appellant.

The capital stock of a corporation is liable to seizure and sale under execution for a debt of a stockholder in whose name it stands on the books of the corporation. Sand. & H. Dig., §§ 3049, 3056–3059. The lien given to the bank by Sand. & H. Dig., § 1342, cannot affect the rights of appellant. Sand. & H. Dig., § 1356. A corporation may waive its statutory lien on the stock of its shareholders. 15 Otto, 217–224; 23 Am. & Eng. Enc. Law, 647.

*J. W. Butler* and *J. C. Yancey*, for appellee.

The stock being in pledge, and appellant having notice thereof, it was not subject to levy by appellant. 42 Ark. 236; 58 Ark. 291; 64 Ark. 215; 31 Ark. 35; Cook, Stock, etc. § 487; 23 Am. & Eng. Enc. Law, 635–6; 12 Ark. 158. The levy of the execution and sale thereunder did not confer upon appellant any right, as purchaser at said sale, to compel the bank, by mandamus, to transfer the stock. 93 Fed. 603. The lien of the bank was prior to that acquired by the execution, and the purchaser thereunder takes subject to it. 60 Ark. 198; 134 U. S. 401; Cook, Stock, etc. §§ 527, 530; 10 Pet. 596; Beach, Priv. Corp. §§ 634, 635; 31 Am. & Eng. Corp. Cas. 451; Field, Corp. § 137; Ang. & Ames, Corp. § 589; 2 Freeman, Ex. § 348. The lien is given to the bank by Sand. & H. Dig., § 1342, and §§ 1352–1356 provide only a remedy for enforcing them. The bank may elect to take this statutory remedy, or may proceed in chancery to foreclose. 30 Ark. 574. Or it may refuse, as in this case, to make the transfer. Cook, Stock, etc. §§ 530, 532; 17 Mich. 141; 45 Conn. 22; 77 Va. 445; 23 Am. & Eng. Enc. Law, 697; 41 Conn. 255. There was no waiver of the lien. 23 Am. & Eng. Enc. Law, 697; Cook, Stock, etc. § 531.

RIDDICK, J., (after stating the facts.) We are of the **opinion** that the ruling of the circuit court was correct. It is

not disputed that H. H. Hinkle was at the time of the issuance of the execution against him, and is yet, indebted to the Bank of Batesville for a sum of money greater than the value of such stock. The bank had a lien upon the stock for its debt, and, if this lien was superior to that of the execution creditor, a transfer of the stock would have availed nothing, for it would have been subject to a lien for a greater sum than the value of the stock. The statute provides that the stock of a corporation shall be transferred only on the books thereof, and that the corporation "shall at all times have a lien upon all the stock or property of its members invested therein for all debts due from them to such corporation." Sand. & H. Dig., § 1342. The wagon company was bound to take notice of this statute. Besides, in this case, it was expressly notified of the bank's claim and lien before it purchased the stock, and its purchase was subject to that lien. This stock had been previously pledged to S. R. Hinkle to secure a loan of money to H. H. Hinkle, but there was no transfer of the stock upon the books of the bank, and there is some controversy as to whether the bank had notice of such pledge before Hinkle became indebted to it. But we regard that as a matter of no importance here; for this is not a controversy between S. R. Hinkle, the pledgee, and the bank, and it is unnecessary to consider whether the lien of the bank was superior in law to that of S. R. Hinkle, or subject to it; for it appears that the liens of both of these parties were prior in point of time and superior to that of the wagon company.

The contention that section 1356, Sand. & H. Dig., gives priority to the execution lien of the wagon company cannot be sustained. That section simply declares that the provisions of the statute for the enforcement of the bank's lien shall not affect "any lien or right acquired by any other party by virtue of any attachment or levy of execution upon the stock of any stockholder in any such corporation." Certainly, the legislature did not by this language intend that the statutory lien of the corporation for the debt of its stockholder should be displaced whenever another creditor levied an execution or an attachment upon the stock. A lien of that kind, subject to be

displaced by the act of the creditors, would be of little value. That section, as we understand it, only declares that the enforcement of the bank's lien by the statutory method shall not affect other liens upon the stock, and leaves the question of the priority of such liens to be determined by proper pleadings to which the holders of such liens are parties, and under rules of law already in force. *Oliphint* v. *Bank of Commerce*, 60 Ark. 198.

We see nothing in the facts of this case to justify a finding that the bank had waived its lien as against the appellant wagon company, and we think the court rightly refused to order a transfer of the stock on the books of the bank.

Judgment affirmed.